McHolm, Administratrix, Respondent, vs. Philadelphia & Reading Coal and Iron Company, Appellant.

*September 14—December 5, 1911.*

*Negligence: Pleading: Variance: Master and servant: Failure to give warning of danger: Assumption of risk: Evidence: Questions for jury: Instructions: Witnesses: Cross-examination: Damages for death.*

1. Where a complaint charges negligence in general terms, which may perhaps cover several grounds, it will not be considered error to allow one of them to be proven, though not specifically alleged, if it is apparent that the defendant has not been misled or prejudiced.

2. Thus, in an action against a corporation for death of an employee, where the complaint alleged that the *defendant* by its agents and employees negligently *without warning* caused a

car to be moved along an elevated runway on which deceased was at work, and that he was struck by said car, knocked to the floor, and killed, there being no demurrer or motion to make more definite, and defendant having denied any fault or negligence on its part, it is *held* that there was no prejudicial error in admitting evidence to show negligent failure of the defendant to promulgate rules requiring the operator of the car to give warning of its approach.

3. A finding in such case that the fall of the deceased was caused by his being struck by the car is *held* to be sustained by the evidence, although no one could testify directly to that fact.

4. It was not error in such case to instruct the jury that employees of a contractor engaged in completing defendant's building, some of them upon the runway in question, might be considered as employees of defendant so far as concerned the duty to establish rules requiring warning to be given of the movement of the car.

5. Subject to certain exceptions relating to the question of the credibility of the witness, cross-examination should be confined to matters concerning which he testified in chief; and the opposing party has no right to go into new matter, especially when it tends to prove an affirmative defense.

6. Whether in this case the deceased knew that no warnings of the movements of the car were ordinarily given, and hence assumed the risk, is *held*, upon the evidence, to have been a question for the jury.

7. An award of $9,000 for the death of an experienced engineer and electrician, forty-eight years old, of good health and habits, earning from $100 to $125 per month, who left a widow thirty-five years old and a son aged eleven years, both of whom had been entirely dependent upon him, is *held* not excessive.

APPEAL from a judgment of the superior court of Douglas county: CHARLES SMITH, Judge. *Affirmed.*

Action to recover damages for the death of one William McHolm, an employee of defendant, who was killed while at work on defendant's dock in Superior. The facts which the evidence tends to prove are briefly as follows: The defendant owns and operates large coal docks and sheds at the city of Superior. The shed where the accident occurred is 200 feet wide and 465 feet in length. It was equipped with several so-called "bridges," consisting of two parallel steel stringers

eighty-five feet from the floor, supported by hangers from the roof. The stringers were laid near together, their top surface about twenty-five inches in width, and each carried a rail or track on its inside edge. On the rails of each bridge ran trucks with wheels, from which was suspended a so-called car or trolley entirely below the stringers. This car was about twenty-five feet in length, carried motors and gearing for its own propulsion, and had suspended from it by cable a clamshell or bucket, which carried coal from vessels at the dock into the sheds and also from piles to bins in the sheds. At the rear end of the car was a cab with glass front, in which was the operator who controlled the movements of the car and clamshell. The only parts of the moving car or cab which projected above the stringers were the wheels and axles, which occupied about eight inches in width along the inside of each stringer, leaving a flat surface of about seventeen inches on the outside of each stringer along its entire length. Near these stringers were suspended electric arc lights for lighting the interior of the shed, and so hung that they could be raised by cable with ratchet attachment to a convenient height for trimming by a man standing or sitting on the stringer. The trimming took place every nine or ten hours, and occupied about ten minutes' time, and the car, when in use, continued to run back and forth during the operation. Doing this work the trimmer walked along the stringer from point to point where the lights were suspended. About five feet above the stringer and a little to the outside and parallel with it was a steel strut or brace which the men took hold of as they went back and forth on the stringer. There was a whistle on the car or trolley which the motorman used when he started the car to work in the morning or at noon to give the oiler notice that electricity was about to be turned on, but which does not appear to have been used at other times with any regularity. No rule had been made by the defendant requiring warning to be given before the

car was moved. The shed was a new one and was not entirely finished at the time of the accident, some of the contractors' men being yet at work on it, but it was in use and the bridge and lights had been in operation since August previous. The plaintiff's intestate had been employed for some years by the defendant on its old docks as chief engineer, and was transferred to the dock in question in the early fall of 1910, and was employed as chief electrician until December 1st, when he was superseded by one Perks and became assistant electrician. While chief electrician the work of trimming the lights was done by an assistant, but when Perks took charge he assigned that duty to the intestate. On the morning of the accident (December 15, 1910) Perks and the intestate were engaged in dropping a cluster of incandescent electric lights from the stringer of one of the bridges for the purpose of throwing more light below, and in the course of the work the intestate had gone out on the stringer, the car being in operation. As the car passed the place where he was standing on the stringer the cluster dropped suddenly, and the intestate plunged from the stringer to the floor, receiving injuries from which he shortly died.

The following special verdict was returned by the jury:

"(1) Was decedent's fall caused by him being struck by the car?  A. Yes.

"(2) Was the defendant guilty of any want of ordinary care in its failure to promulgate rules and regulations for the giving of warning in the movement of its trolley car upon the track in question to decedent while at work on the track stringer at the time of the accident?  A. Yes.

"(3) If you answer the above 'Yes,' then: Was such failure the proximate cause of the death of decedent?  A. Yes.

"(4) Was deceased guilty of any want of ordinary care which contributed proximately to cause the accident?  A. No.

"(5) Did the deceased assume the risk?  A. No.

"(6) Should the court render judgment for plaintiff, for what sum is she entitled to as damages?  A. $9,000."

Judgment being rendered for the plaintiff on the verdict, the defendant appeals.

For the appellant there was a brief by *Boutelle & Chase, A. M. Higgins,* and *Thos. S. Wood,* and oral argument by *Mr. Higgins.*

For the respondent there was a brief by *Hanitch & Hartley,* and oral argument by *Louis Hanitch.*

The following opinion was filed October 3, 1911:

WINSLOW, C. J.  Sixty errors are assigned, but we assume that no serious fault will be found if we fail to discuss each alleged error separately.  The contentions which are deemed of sufficient importance to justify discussion will be treated.  Those not treated have not been overlooked, but are deemed clearly untenable and are overruled without discussion.

1. The judgment is based upon one ground of negligence only, namely, the failure of the defendant to promulgate regulations requiring the operator of the car to give warning of its approach when another employee was upon the stringer. The failure to make such a regulation is not denied, but it is argued that this ground of negligence is not charged in the complaint, and that as the evidence tending to prove it was duly objected to as not within the issues the judgment should be now reversed.  This presents perhaps the most serious question in the case.  The complaint charges, in substance, that while the deceased was performing his duty on the stringer and in the exercise of ordinary care, "the defendant, by its agents, servants and employees, carelessly and negligently *without warning* caused the carriage to move along said runway," whereby the deceased was struck by the said carriage, knocked to the floor, and killed.

The appellant claims that the only charge here made is that some employee or employees of the defendant negligently failed to give warning when the car was about to be

moved along the runway, and reliance is placed on *Jemming v. G. N. R. Co.* 96 Minn. 302, 104 N. W. 1079, and *Connelly v. M. E. R. Co.* 38 Minn. 80, 35 N. W. 582, as supporting the position taken.   It can hardly be denied that the cases cited tend to support the claim made although they are not precisely identical with the present case.   We do not feel inclined, however, to follow so technical a rule as these cases seem to approve.

The defendant is a corporation and can only be guilty of negligence through the acts or defaults of its servants or agents.   An allegation that it was negligent is in legal effect an allegation that its agents or servants were negligent.   If this was a case where, within the rules established by this court, regulations should have been made requiring the giving of warning when the car was about to be moved (*Polaski v. Pittsburgh C. D. Co.* 134 Wis. 259, 114 N. W. 437), the duty to make such regulations was the duty of defendant's managing agents, and the default or neglect was the default or neglect of such agents, and it would be strictly accurate in such case to say that the defendant by its agents negligently without warning moved the car.   If, on the other hand, the only negligence claimed was that a co-employee failed to give a warning which the corporation had made it his duty to give, then it would be incorrect to say that the corporation by its agents was negligent, because in such case the corporation would not be negligent at all, but the sole negligence would be that of the co-employee, for which the corporation was not responsible.

We are not to be understood as approving the rather indefinite form of this pleading.   The question would be a somewhat different one were it before us on demurrer before trial, or on motion to make definite and certain.   In such case it might well be held that, if it was desired to charge the corporation with negligent failure to promulgate rules, the charge should be definitely made in apt words.   But the case

comes here after trial and verdict. The defendant made answer to the merits. It evidently understood that the negligence attempted to be charged was negligence of the corporation, and not negligence of mere co-employees, because, after alleging contributory negligence in its answer, it denied any "fault, negligence, or carelessness" on its part. It is true that it made proper objection upon the trial to the evidence, but it made no claim at that time or at any other that it had been misled by the complaint, or that it was unprepared to meet that issue, and when the plaintiff closed her evidence it declined to put in any evidence.

In view of these facts, and in view of the fact that the complaint in general terms charged the *defendant* with negligence, we hold that no prejudicial error was committed in this respect. We are not now to be understood as deciding that a plaintiff may allege one specific ground of negligence in his complaint and prove an entirely different one upon the trial where proper objection is made, but simply that where the complaint charges negligence in general terms, which may perhaps cover several different grounds, it will not be considered error to allow one of them to be proven though not specifically alleged, if it be apparent that the defendant has not been misled or prejudiced. What has already been said under this head sufficiently answers the claim that the complaint does not state a cause of action.

2. The claim that there was no evidence on which to base the finding that the fall of the deceased was caused by his being struck by the car cannot be sustained. It is true that no one was able to testify directly to the fact, but it was proved to a certainty that he fell directly after the car passed him. He was standing on the seventeen-inch space on the stringer lowering a cluster of incandescent lights weighing ten or fifteen pounds. Mr. Perks was on the ground directing operations, and could see his face over the edge of the stringer, and says: "At the instant the car got to where

he was standing the cluster came down with a jump. His body hit the cluster when the cluster was about two thirds of the way down . . . ; he struck the cluster on the way down." There were found abrasions on the left side of the left ankle and foot which might have been caused by the wheel and axle in passing him. We consider the evidence sufficient to support the finding.

3. The shed was not fully completed at the time of the accident, and some twenty-five or more men employed by the contractors, Heyl & Patterson, were at work on and about the shed. There was testimony to the effect that some of Heyl & Patterson's men were upon the stringer in question in the course of their employment during December up to and past the time of the accident, and this testimony does not appear to be seriously questioned. In view of this testimony the court charged as follows:

"The jury is instructed that so far as this case is concerned the Heyl & Patterson men may be considered as the employees of defendant."

We see no error in this. Heyl & Patterson's men were rightfully there. They were rightfully entitled to protection from unnecessary danger, as well as the defendant's men. Their presence added materially to the probability of accident, and in all reason made the duty to establish rules requiring warning more imperative than before, if such duty existed at all.

4. It is contended that error was committed by a ruling during the cross-examination of the witness Jonasson, who was the operator of the car at the time of the accident and was still in the employ of the defendant. On his direct examination as plaintiff's witness he was asked concerning the construction and operation of the car and tramway, the feasibility of giving warning of the car's approach, the lack of any instructions or rules requiring such warning, and the fact that he took the deceased with his car out to the place where he fell just before the accident. No questions were asked

him on direct examination as to any conversations between himself and deceased at any time prior to the day of the accident. Upon cross-examination the witness was asked whether on or about December 1st the deceased did not say to the witness as he took him out to trim the lights, "Go ahead and don't mind me, Jimmie; if they want coal give it to them." The purpose of this was, of course, to show knowledge or permission on the part of the deceased that the car might run while he was upon the stringer, without paying attention to him. Objection to this question as not proper cross-examination was sustained, the trial judge stating that it would be admitted later if offered as part of the defense. The defendant offered no testimony, however, and so the evidence never came in.

Perhaps the ruling was somewhat strict, but it is justified by the ordinary rules of cross-examination, which, subject to certain well understood exceptions relating to the question of credibility of the witness, confine such cross-examination to matters concerning which the witness has testified in chief, and deny the opposing party the right to go into new matter, especially when it tends to prove an affirmative defense. *Sullivan v. Collins,* 107 Wis. 291, 83 N. W. 310; *Lauterbach v. Netzo,* 111 Wis. 326, 87 N. W. 230.

5. The contention that the evidence shows as matter of law that the deceased must have known that no warnings of the movements of the car were ordinarily given, and hence that he assumed the risk, raises a close question. It must be admitted that there was sufficient testimony which would sustain a finding to that effect. The deceased was an experienced man. He had been employed by the defendant as chief engineer at another dock for several years, and had been at work at the dock and shed in question from August until December 1st as chief electrician. He had been charged with the duty of trimming the lamps for two weeks prior to the accident, and was fully acquainted with the whole situation and the possible movements of the car. On the other

hand, it does not affirmatively appear that he knew or necessarily must have known of the fact that no warning of the approach of the car was ordinarily given. It is not shown that he was ever on the stringer or had his attention called to the matter before December 1st. Just how many times he went out on the stringer after that date to trim the lights does not appear, nor does it appear how many times the car passed him while he was so engaged. It may have been but a few times. While there is some evidence that he went daily and that the car was running every day, there is also evidence tending to show that for several days during that period the clamshell was disabled and the car did not run, also that on some days Jonasson trimmed the lights himself, rather than wait for McHolm, so that it is entirely problematical as to how many times McHolm trimmed the lights while the car was in active operation. There is also evidence by at least one other employee that the whistle was frequently blown, in fact "at almost any time during working hours." Considering the noises of all descriptions which are always to be heard in such places, the fact that the deceased, whenever he was at work on the stringer, was closely engaged in an entirely different occupation, and the fact that it cannot be said with certainty that he was on the stringer more than a few times, we are unable to hold that he assumed the risk as matter of law.

6. It is said that the damages are excessive, but we cannot agree with this contention. The deceased was a man of good health and habits, forty-eight years of age, earning from $100 to $125 per month. He had a wife thirty-five years of age and a son aged eleven years, both entirely dependent upon him. The damages recovered do not seem to us excessive.

*By the Court.*—Judgment affirmed.

Barnes, J., took no part.

A motion for a rehearing was denied December 5, 1911.