SWANBY, Administratrix, Respondent, vs. NORTHERN STATE BANK, imp., Appellant.

*September 20—October 8, 1912.*

*Bills and notes: Proof of ownership: Possession: Mortgages: Foreclosure: Payment of money into court: Interpleader: Form of judgment: Equity: Determining whole controversy: Amendment of pleading.*

1. Mere naked possession of negotiable paper payable to order and not indorsed does not establish title thereto or prove or tend to prove a transfer to such possessor.
2. Where, in an action to foreclose a mortgage, defendant paid the amount due into court, and a bank which had possession of and claimed to own the notes and mortgage was interpleaded as a defendant, and the mortgage was discharged by agreement, the action ceased to be a foreclosure action under the statute and became one of interpleader, involving only the question of ownership of the securities. The statute (sec. 3162, Stats. 1898) prescribing the form of judgment in foreclosure actions was therefore inapplicable.
3. It appearing in such case from the pleadings that instalments of the mortgage debt had been paid by the mortgagors to the bank, and it being found that plaintiff, not the bank, was the owner of the notes and mortgage, the judgment properly disposed of the whole controversy by awarding the plaintiff a recovery, as against the bank, not only of the money paid into court, but also of the amount of the payments previously made to the bank.
4. In such a case the trial court should, if necessary, direct the pleadings to be so amended as to sustain and justify the judgment; and if that court fails to do so the supreme court, on appeal from the judgment, will treat the pleading as having been properly amended.

APPEAL from a judgment of the circuit court for Bayfield county: JOHN K. PARISH, Circuit Judge. *Affirmed.*

This was originally an action brought against Marion and wife to foreclose a real-estate mortgage given by them October 6, 1906, to O. P. Swanby, plaintiff's intestate, to secure payment of five negotiable notes of $450 each, payable to the

order of Swanby, one falling due on January 1, 1908, and one on January 1st of each year thereafter until January 1, 1912. Judgment of foreclosure was demanded on account of the notes falling due January 1, 1910, 1911, and 1912, with interest. It appears that Swanby was cashier of the appellant bank when the notes and mortgage were given, that he died suddenly February 18, 1908, owing the bank $600 upon a note, as well as a sum of more than $5,000 embezzled by him while he was cashier, and that he kept his papers relating to his private real-estate business in the vaults of the bank. The Marions answered, admitting the execution of the mortgage and that the notes declared upon in the complaint were unpaid, but set up further that the *Northern State Bank* had possession of the notes and mortgage, claiming to own them, and praying that they be permitted to pay into court the moneys due and that the bank be interpleaded as a defendant. An order of interpleader was made, and an amended complaint was served containing practically the same allegations as the original complaint, together with an allegation setting forth the interpleader proceedings and denying knowledge as to the claim of the bank. The bank answered, setting up the indebtedness of Swanby, and alleging that the notes and mortgage were pledged and delivered to the bank by Swanby, October 18, 1907, as collateral security for any sums due or which might become due from him to the bank. The answer further alleged that Marion paid the first two notes and interest to the bank October 10, 1908, and that the bank applied the same to extinguish the $600 note of Swanby and the balance upon the indebtedness arising from the embezzlement. The answer prayed judgment establishing its lien on the notes and mortgage and foreclosing the mortgage in its favor.

At the time of the trial the defendant Marion paid into court the amount of the last three notes and the mortgage was discharged by agreement of the parties, while the issues between the plaintiff and the bank were tried by the court.

There was no serious dispute in the evidence. It appeared that the notes and mortgage were in possession of the bank un-indorsed and unassigned at the time of the trial and had been there since about the time of their execution, and were kept with the collateral securities held by the bank; that the first two of the notes were paid to the bank by Marion October 10, 1908. Evidence was offered to the effect that Swanby delivered them to the president of the bank, but the evidence was rejected on the ground that it tended to prove a transaction with a deceased person from whom plaintiff derived her title. At the opening of the trial an amendment to the complaint was allowed, alleging that the defendant had breached the mortgage by failing to pay the note falling due January 1, 1908, as well as by failing to pay the instalments falling due thereafter. Upon these facts the court found that the plaintiff owned the notes and mortgage in question and was entitled to receive the money paid into court by Marion and recover from the bank the two instalments received by it from Marion. Judgment being entered in accordance with this finding, the bank appeals.

*John Walsh,* for the appellant.

For the respondent there was a brief by *A. W. McLeod,* attorney, and *John N. Berg & Adolph E. L. Johnson,* of counsel, and oral argument by *Mr. Berg.*

Winslow, C. J. Upon the principal question in this case, namely, the question whether the plaintiff or the bank was shown by the evidence to be the owner of the mortgage, there is no serious doubt. The notes were negotiable, payable to the order of Swanby, and had never been (so far as the evidence shows) indorsed, assigned, or transferred either by writing or by parol to the bank or any third person. In the absence of other evidence this proves ownership in Swanby. The possession of the bank was under no agreement of any kind with the payee.

Mere naked possession of negotiable paper payable to order does not prove title. *Andrews v. Powers,* 35 Wis. 644. The same result manifestly follows from the provisions of the negotiable instrument law. By sec. 1676—21, Stats. (Supp. 1906: Laws of 1899, ch. 356), it is provided that the holder of a negotiable instrument may sue thereon in his own name, and by sec. 1675, Id., the holder of a note payable to order is defined as the *payee* or *indorsee* in possession thereof.

True, the payee of such a note may transfer it for value without indorsement, and in such case the transferee not only acquires the transferrer's title, but also the right to have the note indorsed (sec. 1676—19, Stats.), but no such transfer was shown here. Mere naked possession does not prove or tend to prove it.

The second contention made is one of form rather than of substance. It is to the effect that the judgment is erroneous because not in conformity with the statute governing judgments in foreclosure actions, and particularly because it contains a personal judgment against the bank for the recovery of the two instalments paid to it by Marion before the commencement of the action.

It is true that the judgment does not conform to the foreclosure statute. It entirely omits any provisions for the foreclosure of the mortgage or sale of the premises. But all this was for a very good reason. The mortgage had ceased to be a lien upon the premises before judgment was rendered, and hence could not be foreclosed. By the interpleading of the bank and the deposit of the money represented by the mortgage in court the action had practically ceased to be a foreclosure action and had become an equitable action of interpleader in which the two rival claimants to the notes and mortgage were fighting out their respective claims. Sec. 2610, Stats. (1898).

It would be manifestly absurd to hold that when the action has reached this stage the mandatory provisions of the statute

relating to judgments in foreclosure are applicable. The action is no longer an action of foreclosure under the statute, but an action of interpleader, in which there is no question of foreclosure left, but only the question of the title to the proceeds of the mortgage after payment thereof.

With reference to an analogous situation this court said in *Hemenway v. Beecher,* 139 Wis. 399, 121 N. W. 150:

"Sec. 2610, Stats. (1898), relating to the interpleading of additional parties, and sec. 2656a of the same Statutes, relating to cross-complaints and proceedings where controversies arise between defendants, are very broad in their terms and were intended to give courts plenary powers not only to call in new parties, but to mould the pleadings and dispose of all branches of a controversy in one action after having obtained jurisdiction of the necessary parties. The idea in both sections is to enable the court to grasp all the issues germane to the main controversy, whether arising between the plaintiff and the defendant, or between defendants, or between a defendant and an outside party, and dispose of them in one and the same action, and thus avoid circuity of action and multiplicity of suits. This purpose should be encouraged rather than discouraged by the courts. It is in line with the idea that courts are formed to decide controversies without unnecessary delay and without undue refinement as to pleading or procedure so long as the parties are before the court and the issues understood."

There was really but one question between the plaintiff and the bank, and that was the question of the ownership of the notes and mortgage. When that question was finally decided in this case it was decided for all time and for all future actions between these parties. If the plaintiff was held to be the owner, she would not only own the fund in court but also be entitled to receive the money which the bank had previously collected from Marion. Why compel her to go out of court by one door and come in by another in order to recover this sum, when the question of liability is no longer open and the only effect of such a proceeding would be to charge the bank with an-

other bill of costs? Such rulings are the kind of rulings which furnish foundation, if foundation there be, for recent complaints as to the efficiency of the courts.

As indicated in the foregoing quotation from the *Hemenway Case,* secs. 2610 and 2656a, Stats. (1898), were intended to give the trial court very broad powers, not only in the calling in of parties but in the moulding and adapting of the pleadings so as to finally dispose of all branches of the controversy, and if that was the intention of the legislature it is certainly the duty of the courts to carry it out.

The controversy between the plaintiff and the bank was over the ownership of the notes. The question of the right of the plaintiff to recover the instalments theretofore paid to the bank by Marion was simply a subsidiary branch or detail of the controversy over the ownership, which ought in principle to be disposed of in the one action for the benefit of the bank as well as for the benefit of the plaintiff. It is true that the complaint first served after the order of interpleader contained no allegation with regard to the payment of these instalments to the bank and demanded no judgment for any specific relief thereon. On the trial, however, the complaint was amended by adding an allegation that Marion had failed to pay to the plaintiff the two instalments which the bank in its answer admitted and alleged that it had received. So the fact was before the court both by the pleadings and evidence, and without objection. The trial court was thus fully apprised of the fact that this subsidiary controversy, depending entirely on the decision of the main controversy, existed, and it seems that it was practically its duty, under the general principles laid down in the *Hemenway Case,* to direct the pleadings to be so amended as to sustain and justify the judgment. When such a situation exists this court will, of course, treat the pleadings as properly amended in order to support a judgment which in all other respects is manifestly right.

*By the Court.*—Judgment affirmed.