SIMPSON, Plaintiff in error, v. STATE, Defendant in error.

*September 9—October 4, 1966.*

196

198

For the plaintiff in error there was a brief and oral argument by *Nathaniel D. Rothstein* of Milwaukee.

For the defendant in error the cause was argued by *Robert E. Sutton,* assistant district attorney of Milwaukee county, with whom on the brief were *Bronson C. La Follette,* attorney general, and *Hugh R. O'Connell,* district attorney.

CURRIE, C. J.   Defendant seeks a new trial on the ground of alleged prejudicial errors committed by the trial court.  These alleged errors consist of the following:

(1) Defendant's oral admissions to the police were wrongly admitted into evidence because of the absence of specific admonitions regarding defendant's right to counsel and his right to remain silent.

(2) The trial court unduly restricted the cross-examination of the two court-appointed psychiatric witnesses.

(3) The trial court erred in the instructions given on the insanity issue.

### *Admissibility of Admissions Made to Police Officers.*

Shortly after the alleged shooting defendant was arrested, handcuffed and placed in a squad car and later driven to the Safety Building.  While in the car and at the Safety Building after brief interrogation defendant made several statements relating to the chronology of events leading up to the shooting as well as oral admissions to the effect that "I did it.  I might just as well tell you about it" and "I shot her, I don't know how many times."  The record indicates that Officer Mueller, according to his own testimony, in general informed defendant to the effect that he was not required to make any statement.  He did not recall whether he told defendant that anything the latter said might be held against him; nor did he recall informing him that he was entitled to be represented by legal counsel *before* he made the statement.

The other officer concerned, Officer Tschachler, related that he questioned defendant at the Safety Building; that he informed him he was not required to make a statement; that anything that was said could be used against him and that if he was interested in obtaining an attorney

he was privileged to do so. Neither of the officers in question used force, threats or promises with respect to defendant.

Defendant asserts that the incriminating admissions should have been excluded because defendant was not specifically informed of his right to counsel and of his absolute right to remain silent. The same experienced trial counsel represented defendant at trial that appeared for him in this court. No objection was made to the admissibility of these incriminating admissions on the ground that they were coerced so that no hearing was held in the absence of the jury to determine their voluntariness. It is apparently defendant's position that it appears from the face of the record that his constitutional rights have been denied by the admission of these statements into evidence. The recent United States supreme court decision of *Miranda v. Arizona* [1] requires that whenever an individual is taken into custody or otherwise deprived of his freedom:

"He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." [2]

The procedural safeguards set out in *Miranda*, however, apply only to cases in which the trial began after the date of the decision, viz., June 13, 1966. [3] Since *Miranda* is inapplicable to the case presently before this court it is necessary to look to the law controlling prior to that decision. In this court's most recent pronouncement of

[1] (1966), 384 U. S. 436, 86 Sup. Ct. 1602, 16 L. Ed. (2d) 694.

[2] (1966), 384 U. S. 436, 479, 86 Sup. Ct. 1602, 16 L. Ed. (2d) 694.

[3] *Johnson v. New Jersey* (1966), 384 U. S. 719, 86 Sup. Ct. 1772, 16 L. Ed. (2d) 882. See also *Reimers v. State* (1966), 31 Wis. (2d) 457, 143 N. W. (2d) 525.

the constitutional principles applicable to self-incrimination, and right to counsel *prior* to *Miranda,* it stated:

"This court has never adopted a hard-and-fast rule that an accused must be informed of his constitutional right not to incriminate himself before he can be interrogated by police officers. In *Holt v. State* this court stated, '. . . that failure to do so will not render the product of the interrogation inadmissible unless it appears that the defendant by reason of his education, intelligence, or other circumstances has been imposed upon.' " [4]

With respect to right to counsel it stated:

"In *Nuenfeldt v. State* this court re-examined its interpretation of *Escobedo v. Illinois* and confined it to its facts, holding that an accused's constitutional rights are only violated if he requests counsel and this request is denied." [5]

The record is barren of any request or desire by defendant to consult an attorney, even after he was informed of such right. No inquiry was made to ascertain whether defendant at the time he made the incriminating admissions knew of his right to remain silent. We know he was forty-one years old and had a ninth-grade education. Furthermore, the record discloses that the officers testified they did tell defendant he had the right to remain silent. On this record we cannot hold that defendant "by reason of his education, intelligence, or other circumstances" was "imposed upon." Accordingly we find no error in admitting the admissions into evidence.

### Limitation of Cross-Examination.

On direct examination by the court, Drs. Fitzgerald and Weber, the two court-appointed psychiatrists, testi-

---

[4] *State ex rel. Van Ermen v. Burke* (1966), 30 Wis. (2d) 324, 331, 140 N. W. (2d) 737.

[5] Id. at p. 334.

fied that defendant was sane under the *Esser Case* test,[6] viz., whether or not defendant knew the nature and quality of his acts and could distinguish between right and wrong. In cross-examining Dr. Fitzgerald defendant's counsel asked this question:

"*Q.* Isn't it possible, Doctor, that a man who is engaged in an argument can black out?"

The trial court sustained the state's objection to this question on the ground it had to be either directed specifically to defendant or, if hypothetical, it had to be phrased within the proper framework of the evidence presented. Upon the court so ruling defendant's counsel stated he would confine himself "to this particular defendant." Counsel then asked further questions and then put this question:

"*Q.* Doctor, could this defendant, who, in the event that he got into an argument, become so frenzied by the argument so as to lose and become bereft of his judgment at that particular time?"

The state objected thereto on the ground that it was objectionable as to form because of containing too many indefinites, and the court sustained the objection. Defendant's counsel then put the following question:

"*Q.* Is it, Doctor, possible for this defendant to have become involved in an argument with Mae Blackwell and so incensed and enraged so as to become bereft of his reason on February 12, 1964? Is that possible?"

The state entered the objection that it also was improper as to form because it did not include "in the question all the evidence as to the type of argument we are talking about—not just any argument." The court also sustained this objection. Defendant's counsel, in an attempt to meet the particular objection thus sustained by

---

[6] *State v. Esser* (1962), 16 Wis. (2d) 567, 115 N. W. (2d) 505.

the trial court rephrased the question so as to include additional facts, as follows:

"*Q.* Doctor, assume you have a hypothetical person, age 41 years, who on February 12, 1964, is driving his automobile and he sees his girlfriend in a car with another man. The other car comes to a stop and so does the anonymous person. Assume further that the anonymous person gets out of his car, leads the girlfriend back into his own car. Assume further that an argument ensues. Assume further that immediately following the argument the anonymous person cannot remember any of the details with respect to any events following the argument, and assume further that the anonymous person then fires a shot or shots at the girlfriend. Do you have an opinion within a reasonable degree of medical certainty, Doctor, as to whether or not this anonymous person could have been so frenzied by the argument as to become bereft of his reason and not be able to exercise his judgment?"

The state objected to this on the ground that it was phrased in terms of a hypothetical person, not the defendant. The trial court sustained the objection but on a different ground, *i.e.,* the question did not "fairly incorporate the evidence bearing upon the opinion that is tried to be presented."

The trial court later sustained an objection to this further question:

"*Q.* Doctor, can a person who becomes involved in an argument become so frenzied as to lose all knowledge of subsequent events immediately following that condition?"

Defendant contends that these rulings of the trial court unduly limited defendant's right of cross-examination and constitute prejudicial error. In resolving this issue we start with the premise that the scope of cross-examination in a criminal case lies to a great extent in the discretion of the trial court. The most recent pro-

nouncement to this effect was in *O'Connor v. State* [7] wherein it was stated:

". . . the degree and manner of cross-examination in criminal cases are matters lying largely in the discretion of the trial court." [8]

There is the further rule that great liberty and latitude are allowed in the cross-examination of expert witnesses. [9] It is upon this rule that defendant strongly relies. However, the applications of this rule are often directed to such matters as the education of the expert witness, his practical experience, the extent of his observation outside his own work, as well as other cognate matters bearing directly on his ability as an expert. [10] Upon such examination, hypothetical questions may go outside the record for the purpose of testing the skill of the witness. [11]

In the instant cross-examination it is clear that defendant's counsel was not directing his attack upon the qualifications or ability of the psychiatrist as an expert but was seeking support for his hypothesis that frenzy as a result of an argument and claimed ensuing blacking-out equated legal insanity. This court would feel better satisfied if the trial court had grounded its rulings which

[7] (1966), 31 Wis. (2d) 684, 143 N. W. (2d) 489.

[8] Id. at page 689. In accord are *State v. Schmear* (1965), 28 Wis. (2d) 126, 132, 135 N. W. (2d) 842; *Sprague v. State* (1925), 188 Wis. 432, 440, 206 N. W. 69; *Hedger v. State* (1911), 144 Wis. 279, 296, 128 N. W. 80; *Harries v. United States* (9th Cir. 1965), 350 Fed. (2d) 231; *District of Columbia v. Clawans* (1937), 300 U. S. 617, 57 Sup. Ct. 660, 81 L. Ed. 843. See also 4 Jones, Evidence (5th ed.), p. 1744, sec. 929.

[9] *Brey v. Forrestal* (1912), 151 Wis. 245, 138 N. W. 645; *Delap v. Liebenson* (1926), 190 Wis. 73, 208 N. W. 937; *Shurpit v. Brah* (1966), 30 Wis. (2d) 388, 141 N. W. (2d) 266. See also Anno. Expert Witness-Cross-Examination, 71 A. L. R. (2d) 6.

[10] *Brey v. Forrestal, supra,* footnote 9, at page 258.

[11] *Delap v. Liebenson, supra,* footnote 9, at page 82. See also *Harweger v. Wilcox* (1962), 16 Wis. (2d) 526, 114 N. W. (2d) 818; 2 Jones, Evidence (5th ed.), page 831, sec. 437.

sustained objections to the aforequoted questions on the principle that such terms as "black-out," "bereft of judgment," "bereft of reason," and "loss of knowledge of subsequent events" are largely meaningless to the jury in determining whether defendant at the time he shot Mae Blackwell was suffering from such an "abnormal condition of the mind . . . as to render the defendant incapable of understanding the nature and quality of the alleged wrongful act, or incapable of distinguishing between right and wrong with respect to such act." [12] If the trial court had so ruled we would not hold it constituted an abuse of discretion, although we would have preferred to have had the court overrule the objections to some of these questions.

We are fully cognizant that we stated in *State v. Carlson,*[13] and reaffirmed in *State v. Esser:*[14]

"Even under the right-wrong test, no evidence should be excluded which reasonably tends to show the mental condition of the defendant at the time of the offense."

Nevertheless, the right of cross-examination of a psychiatric expert witness is subject to some discretionary control by the trial court.

The trial court's reason given for ruling that the longest of the propounded hypothetical questions was objectionable as to form, because some facts in evidence were not included, was erroneous. The correct rule is that all the facts in evidence in the case need not be stated in the hypothetical question, but only those needed to allow the expert to provide a correct answer on the theory advocated by the questioner's side of the case.[15]

[12] See *State v. Esser, supra,* footnote 6, at page 599.

[13] (1958), 5 Wis. (2d) 595, 607, 93 N. W. (2d) 354.

[14] Footnote 6, page 593.

[15] *Sharp v. Milwaukee & Suburban Transport Corp.* (1963), 18 Wis. (2d) 467, 477, 118 N. W. (2d) 905; *Kreyer v. Farmers' Co-operative Lumber Co.* (1962), 18 Wis. (2d) 67, 117 N. W. (2d) 646.

Even if we were to have concluded that there was an abuse of discretion on the part of the trial court in sustaining the objections to the aforequoted questions, we would not hold it to be prejudicial error. This is because we do not perceive how the answers would have been material to the issue of whether defendant was insane under the test of legal insanity laid down in *Esser*.[16]

### Instructions to Jury.

Defendant attacks the instructions to the jury bearing upon the issue of insanity on two grounds. The first of these is that they were inconsistent. The two paragraphs claimed to be inconsistent are:

"In law the term 'insanity' means such an abnormal condition of the mind from any cause as to render the defendant incapable of understanding the nature and quality of the alleged wrongful act or incapable of distinguishing between right and wrong with respect to such act.

"The temporary frenzy or passion arising from excitement or anger, not from any mental disease, is not an excuse for crime. The violent passion or frenzy of a sane man, or a man capable of understanding and appreciating the nature and quality of his act—it may be prompted by revenge, hatred, jealousy, envy, or the like—must be clearly distinguished from insanity, creating a condition of mind that dethrones and suspends the reason and understanding and renders a man incapable of understanding the nature and quality of his alleged wrongful act, or of distinguishing between right and wrong with respect to such act."

It is contended that while the definition of insanity contained in the first paragraph properly includes an abnormal condition from "any cause," the second paragraph rules out a particular kind of abnormal condition of the mind. The answer is that the second paragraph

---

[16] See footnote 6.

has the effect of ruling out temporary frenzy or passion arising from excitement or anger, and not from mental disease, as an abnormal condition of the mind. When thus interpreted there is no inconsistency in these two quoted paragraphs of the instructions.

The second attack made by defendant upon the instructions given the jury relates to these two paragraphs thereof:

"Moral perversion is a perverted condition of the moral sense when the person is mentally sane. This condition is distinguished from that of mental insanity already mentioned. It is the distinction between a mental incapacity to understand the distinctions between right and wrong, and a moral indifference to these distinctions, and you are to determine how far, if at all, it is applicable in this case.

"Moral perversion arises from a blunted conscience or depravity of heart, and sometimes we are not unapt to mistake it for evidence of something wrong in mental constitution. We have probably all known men and women of more than the average mental endowments, whose whole lives have been marked by a kind of moral obliquity, but indifference to what is right is not ignorance of it, and depravity is not insanity, and you must be careful not to mistake moral perversion for mental disease."

These two paragraphs formed the concluding portion of the charge devoted to the insanity issue. The ground of attack is that these paragraphs were outside the scope of the issues, would tend to confuse and mislead the jury, and cause the jury to wrongfully infer that defendant was obsessed with a sexual or moral perversion.

From our reading of this criticized instruction we conclude that the trial court was merely attempting to state the distinction which exists between indifference to what is right and wrong and legal insanity where the accused is incapable of distinguishing between right and wrong. This same distinction is stated in one of the model instructions set forth in Wis J I—Criminal, as follows:

"Repeated criminal or other anti-social conduct is not equivalent to insanity. *(A person is not insane merely because he is a sociopath or psychopath or has a sociopathic or psychopathic personality.)* You must distinguish between mental incapacity to understand the nature and quality of the act and indifference to the nature and quality of the act. You must distinguish between mental incapacity, to distinguish right from wrong and indifference to what is right or wrong." [17]

It is the trial court's labeling of indifference to right or wrong as "moral perversion" to which defendant particularly objects. However, this court in two pre-*Esser* cases approved of instructions given on insanity in criminal prosecutions which employed the terms "perverted" and "perversion."

In *Lowe v. State*,[18] this court stated:

" 'Insanity means such a *perverted* and deranged condition of the mental or *moral* faculties as to render a person incapable of distinguishing between right and wrong, or not conscious at the time of the nature of the act which he is committing; and where, though conscious of it, and able to distinguish between right and wrong, and knowing that the act is wrong, yet his will—by which is meant the governing power of his mind—has been, otherwise than voluntarily, so completely destroyed that his actions are not subject to it, but are beyond his control.' " [19]

Likewise in *Schissler v. State*,[20] where instructions on the defense of insanity were objected to as erroneous, this court declared:

"The jury were given the broadest latitude to find the fact of insanity if the accused was incapable of distinguishing between right and wrong, by reason of a *perversion* of his mental and *moral* faculties, or if he was

[17] Wis J I—Criminal, 635.
[18] (1903), 118 Wis. 641, 96 N. W. 417.
[19] Id. at page 660.
[20] (1904), 122 Wis. 365, 99 N. W. 593.

thereby rendered unconscious of the nature of the act." (Emphasis supplied.)[21]

We do not believe that the use of the term "moral perversion," in the instant instructions, was subject to being reasonably interpreted by the jury as suggesting that defendant's killing of Mae Blackwell was due to sexual perversion, especially since there was no evidence in the record to so indicate. Therefore, we find no error in the giving of the instruction. However, we recommend that the model instruction set forth in Wis J I—Criminal, 635, omitting the sentence in parentheses,[22] be given by trial courts rather than the one given in this instance, thus avoiding the term "moral perversion."

*By the Court.*—Judgment affirmed.

---

[21] Id. at page 385.

[22] For the reason for omitting the sentence in parentheses relating to psychopaths, see *Brook v. State* (1963), 21 Wis. (2d) 32, 47, 123 N. W. (2d) 535.