McNear, Administratrix, Respondent, vs. Mitchell-Lewis Motor Company, Appellant.

*October 11—December 10, 1912.*

*Master and servant: Death from explosion of gas oven: Proximate cause: Dangerous conditions: Warning: Assumption of risk: Contributory negligence: Questions for jury.*

1. While the foreman of the assembling department in defendant's automobile factory was holding a lantern up to a small hole in the side of a gas enameling oven, which was under his charge, in order to read a thermometer which hung in the oven opposite the hole, an explosion occurred and he was killed thereby.  The oven was not equipped with any pipe or flue through which the products of combustion, the smoke and fumes from baking enamel, and any unconsumed fuel gas

could escape to the outer air, and such vents as existed were kept nearly closed while the oven was being used, with the result that the accumulated products of combustion might smother the burning gas and thereafter unconsumed fuel gas would escape and form an explosive mixture in the oven. Upon evidence tending to show, among other things, that an equipment of pipes and flues to the outer air would have increased the draft and have removed any undue accumulation of gaseous products, the jury were warranted in finding that the defective and dangerous condition of the oven, due to lack of such equipment, was the proximate cause of the death.

2. Whether the deceased knew and appreciated, or ought to have known and appreciated, the danger incident to operating the oven in such condition and in the manner in which it was operated, and hence assumed the risk; whether defendant was negligent in failing to instruct or warn him as to such danger; and whether he was guilty of contributory negligence in bringing a lighted lantern near to the opening in the oven, were also, upon all the evidence in the case, questions for the jury.

APPEAL from a judgment of the circuit court for Racine county: F. C. ESCHWEILER, Judge. *Affirmed.*

The plaintiff, as administratrix of her husband's estate, brings this action to recover damages for the death of her husband, who was killed by the explosion of a gas enameling oven in the factory of the defendant on the night of March 6, 1911, about 9 :35 o'clock in the evening. The complaint alleges negligence on the part of the defendant in three respects: The oven was defective and dangerous in construction, in that it had no smokestack running from the interior of the oven through the factory roof to the outer air. The defendant failed to warn the deceased of the dangerous character of the construction of the oven. The defendant failed to instruct the deceased as to how to operate the oven safely.

The deceased was killed by an explosion of accumulated gas in the oven, which occurred while he held a lantern in front of a hole in the oven in order to see the temperature as indicated by a thermometer which hung in the oven opposite the hole. The evidence tends to show that the accumulation of unconsumed gas in the oven was the natural result of the

fact that the oven vapors and gas had not been removed to the outer air through a stack and as a consequence had accumulated in the oven and smothered the burning gas and the gas had then escaped into and accumulated in the oven.

The evidence introduced on the trial of the action tends to establish the following facts:

The defendant is engaged in the manufacture of automobiles at its factory in the city of Racine, Wisconsin.

The deceased was born on a farm in West Virginia. He attended a country school, became a clerk in a grocery store, worked in a hardware store in which they did repair work on bicycles, became a partner in a bicycle repair shop wherein a small gas oven was used for enameling bicycles, then became a workman in a bicycle factory, finally entered defendant's employ as an ordinary mechanic, and in the course of five or six years became foreman of the assembling department, the position he held at the time of his death. He had no technical education, but seemed to have a natural mechanical bent and was an intelligent and capable man. At the time of his death he was thirty-nine years of age and was earning $175 per month. His widow and two children survive him.

As foreman of the assembling department the deceased had general charge of a room about 300 feet long and 180 feet wide. In the busy season of the year about 100 men would be engaged in this department. The work of the department consisted in assembling the parts of the framework of the automobiles and putting them together into what is known as the "chassis," and in testing the engines.

Until about two months before the date of the accident all of the enameling done in the defendant's factory was done in the painting department under the foreman of that department. In the process of enameling, the article to be enameled is first dipped into the enameling liquid and is then baked. In the painting department the defendant had eight or ten ovens to bake the enamel. These ovens were made of

two thicknesses of sheet iron with a layer of asbestos between, and were about seven feet high, seven feet wide, and fourteen feet long.   They had stacks connecting the interiors with the outer air.

In order to avoid trucking from the assembling room to the painting department, in the fall of 1910 two gas ovens for enameling, of the same size and construction as those in the painting department, were constructed and erected in the southeast corner of the assembling room.   A space of about three feet separated the ovens.   The doors, occupying practically all of the end of the ovens, were on the north side. Four or five feet from the front of the ovens a two-inch supply pipe for gas came down from above into the space between the ovens.   In each of these supply pipes, four or five feet from the floor, was a valve or shut-off to control the gas. Each supply pipe was supplied with a Bunsen burner, a device for mixing air with the gas before combustion, which results in more perfect combustion and greater heat.   In the interior of the ovens near the floor were two pipes running the full length of the ovens, each with four rows of perforations about one-half inch apart, which were the burners.   In the center of the top of each oven was an opening about eight inches square, over which fitted a pipe or sleeve having a damper which could be controlled from the space between the ovens.   The pipes on the tops of the ovens opened into the assembling room and did not connect the interiors of the ovens with the outer air.   About five feet from the floor and midway the length of the oven which was in the corner of the room was a small hole cut in the side of the oven so that a thermometer hanging in the interior of the oven might be seen from the space between the ovens.   This hole in the oven which exploded was originally covered with glass, but the glass had become broken and was replaced by a piece of metal.   There was some evidence that the oven which stood. in the corner, which was the one which exploded, had but

two draft openings three and one-half inches in diameter, that these were insufficient, and that there should have been three. About two months prior to the accident the superintendent of the defendant's plant placed the operation of these two ovens under the charge of the deceased and directed him to go to Mr. Wade, the foreman of the painting department, for any information he might need as to the operation of the ovens.

The process of enameling is as follows: The articles to be enameled are dipped in the enameling liquid, composed of oils, lamp black, and turpentine, and the liquid is permitted to drain off. The articles are then placed in the oven, the gas is turned on and lighted, the doors are closed, and the drafts at the bottom of the oven are opened. The ovens are raised to a temperature of somewhat over 300 degrees and the process takes about three hours. In the painting department it was customary to open the damper in the pipe connecting the interior of an oven with the outer air and thus allow the escape of the products of combustion and the dark, acrid, ill-smelling smoke or gas which was caused by heating the enameling liquid. In an hour or an hour and a half the fumes from the enameling liquid would cease to rise and the damper in the vent would be nearly closed and the heat retained in the oven.

There was evidence in the case that the opening of the dampers in the vents of the oven in the assembling room permitted the noxious fumes created by heating the enameling liquid to escape into the room and that complaint was made by the men working therein, and for this reason it was necessary to keep the vents in the ovens in this room nearly closed while these fumes were being given off. Obviously, the greater the quantity of material in the oven the greater the amount of fumes given off by heating the enameling liquid.

The deceased had been referred to Mr. Wade, the foreman of the painting department, for information regarding the

operation of the ovens, and Mr. Wade had told him how to prepare the enameling liquid, how much heat to give the ovens, and how long to continue the baking. There is evidence that during the two months deceased had charge of the ovens he complained to Mr. Wade several times that the gas had become extinguished during the process of baking, but it does not appear that he understood what caused it or that Mr. Wade gave him any information on the subject. There was evidence that he had said that the ovens were getting the better of him and that he was afraid of them. The superintendent and manager of the defendant's plant considered the operation of the ovens to be a simple matter, no more difficult than the operation of the ordinary gas stove. It appears that instructions had been given the men by the deceased that they should not go near the ovens with an open light or while smoking.

Shortly before 6 o'clock on the evening of the day of the explosion the oven had been well filled with material to be enameled. The gas was lighted, the drafts fixed, the doors closed, and, as was customary, the time (9:30) when the night watchman was to turn off the gas was marked on the oven door. At about 9:30 o'clock the watchman, who came on duty at 6 o'clock, was making his third round. He set his lantern down in front of the oven, went in between the two ovens, turned off the gas from the oven, and then rubbed the figures off of the oven door. While he was doing these things the large door in the east wall of the assembling room opened and the deceased drove into the room in his automobile. The watchman had been directed to admit the deceased into the factory at any time at night, and he called to the deceased to wait a minute. The deceased waited in his car while the watchman went to the light switches near the door, where he first turned on a light far down the room and away from the ovens. He extinguished this light and lighted another about fifty feet from the ovens. The deceased made

some remark about that being all right, that he had plenty of light, and taking up the watchman's lantern walked between the ovens to the place where the thermometer hung in the oven.   He raised the metal slide over the hole and lifted up his lantern so that he might see the thermometer.   An explosion followed and the plaintiff's intestate was killed thereby.   His watch was found on his person; it had stopped at 9:35 o'clock.

The evidence shows that the small oven, heated by gas, which the deceased operated when he was engaged in the bicycle repair business, was without a vent to allow the escape of the noxious fumes caused by heating the enamel, that the gas burned under the oven, but that unconsumed gas might get into the oven through holes in the bottom, and that there had been gas explosions in the operation of this oven while he operated it.

There was evidence that at the request of the deceased an incandescent light had been suspended from the roof of the assembling room so that it hung between the two ovens in such a position that the thermometer could be read by its light.   The watchman testified that the light had not been in running order for several days before the explosion.   There was also evidence that the wires carrying the current to this light were all right immediately after the explosion.

The testimony of a chemist in plaintiff's behalf was to the effect that the explosion was due to an accumulation of unconsumed fuel gas in the oven; that the unconsumed gas had accumulated in the oven because the flames in the oven had been smothered by the gases caused by combustion of the fuel gas and the smoke and fumes caused by heating the enamel; and that these smothering gases remained in the oven because of insufficient or defective ventilation of the oven.

The watchman testified that he had not detected the odor of unconsumed fuel gas about the oven while he was shutting off the gas and rubbing off the figures from the oven door immediately before the explosion.

The jury returned the following verdict:

"(1) Was the oven which exploded, in the place and for the purpose for which it was being used at the time of the death of Frank B. McNear, defective and dangerous by reason of not being equipped or connected with any additional flue or pipe to carry off the products of combustion and the smoke and fumes arising from the baking of the enamel? A. Yes.

"(2) If your answer to the first question be 'Yes,' then answer this: Ought the defendant in the exercise of ordinary care to have known that said oven was in such defective and dangerous condition before the explosion which caused the death of said Frank B. McNear? A. Yes.

"(3) If you answer the first and second questions 'Yes,' then answer this: Was such defective and dangerous condition the proximate cause of the death of said Frank B. McNear? A. Yes.

"(4) If you answer the first question 'Yes,' then answer this: Did the defendant, before the death of said Frank B. McNear, negligently fail to instruct or warn him in respect to the dangers incident to the operation of said oven at the place and for the purpose for which it was being operated? A. Yes.

"(5) If you answer the fourth question 'Yes,' then answer this: Was said negligence of defendant the proximate cause of the death of said Frank B. McNear? A. Yes.

"(6) Did the said Frank B. McNear know and appreciate the dangers incident to the operation of said enameling oven in the manner he did operate it and in the condition the evidence shows it to have been? A. No.

"(7) If you answer question 6 'No,' then answer: Ought the said Frank B. McNear, in the exercise of ordinary care, to have known and appreciated the dangers incident to the operation of said enameling oven in the manner he did operate it and in the condition the evidence shows it to have been? A. No.

"(8) Ought the deceased, Frank B. McNear, considering his age, intelligence and experience, in the exercise of ordinary care, to have reasonably understood and appreciated before his injury the danger of an explosion by bringing a lighted lantern near the oven in question? A. No.

"(9) Was the said Frank B. McNear guilty of any want of ordinary care which proximately contributed to his death? *A.* No.

"(10) At what sum do you assess the plaintiff's damages? *A.* $10,000."

This is an appeal from the judgment on the verdict.

For the appellant there was a brief by *Cavanagh & Barnes,* attorneys, and *Martin J. Gillen,* of counsel, and oral argument by *C. D. Barnes.* They cited *Hynes v. Holt L. Co.* 147 Wis. 172, 132 N. W. 889; *Naylor v. C. & N. W. R. Co.* 53 Wis. 661, 11 N. W. 24; *Stephenson v. Duncan,* 73 Wis. 404, 41 N. W. 337; *Paule v. Florence M. Co.* 80 Wis. 350, 50 N. W. 189; *Hazen v. West Superior L. Co.* 91 Wis. 208, 64 N. W. 857; *Powell v. Ashland I. & S. Co.* 98 Wis. 35, 73 N. W. 573; *Schmitt v. Hamilton Mfg. Co.* 135 Wis. 117, 115 N. W. 353; *Hocking v. Windsor S. Co.* 125 Wis. 575, 104 N. W. 705; *Lehman v. C., St. P., M. & O. R. Co.* 140 Wis. 497, 122 N. W. 1059; *Vallée ès qualité v. New City G. Co.* 7 Am. Law Rev. 767; *Brown v. New York G. L. Co.* Anthon, N. P. 2d ed. (N. Y.) 351; *Lebanon L., H. & P. Co. v. Leap,* 139 Ind. 443, 39 N. E. 57, 29 L. R. A. 342; *Lanigan v. New York G. L. Co.* 71 N. Y. 29; *Guile v. La Crosse G. & E. Co.* 145 Wis. 157, 130 N. W. 234.

For the respondent there was a brief by *Simmons & Walker,* and oral argument by *John B. Simmons.* They argued, among other things, that the master is bound to know and to warn the servant of dangers arising from scientific facts and laws. *Adams v. G. R. R. Co.* 160 Mich. 590, 125 N. W. 724, 19 Am. & Eng. Ann. Cas. 1152 and note, 27 L. R. A. N. s. 953; *Smith v. Peninsular Car Works,* 60 Mich. 501, 27 N. W. 662; *Ribich v. Lake Superior S. Co.* 123 Mich. 401, 82 N. W. 279; *Herring v. E. I. Du Pont de Nemours P. Co.* 139 Wis. 412, 121 N. W. 170; *Rankel v. Buckstaff-Edwards Co.* 138 Wis. 442, 120 N. W. 269; *Ruick v. Milwaukee B. Co.* 144 Wis. 404, 129 N. W. 414; *Ramsey v. Raritan C. Works,*

78 N. J. Law, 474, 74 Atl. 437; *Redmund v. Butler,* 168 Mass. 367, 47 N. E. 108; *Holland v. Tennessee C., I. & R. Co.* 91 Ala. 444, 8 South. 524, 12 L. R. A. 232; *Consolidated C. Co. v. Haenni,* 146 Ill. 114, 35 N. E. 162; *Hysell v. Swift & Co.* 78 Mo. App. 39; *Scagel v. C., M. & St. P. R. Co.* 83 Iowa, 380, 49 N. W. 990; and other cases. The servant has a right to know the precise danger which threatens him. *Jones v. Florence M. Co.* 66 Wis. 268, 279, 28 N. W. 207; *Kaczmarek v. Geuder, P. & F. Co.* 148 Wis. 46, 134 N. W. 348; *Fidelity T. Co. v. Wisconsin I. & W. Works,* 145 Wis. 385, 129 N. W. 615; *McDougall v. Ashland S. F. Co.* 97 Wis. 382, 73 N. W. 327; *Wolski v. Knapp-Stout & Co. Co.* 90 Wis. 178, 63 N. W. 87; *Fox v. Peninsular W. L. & C. Works,* 84 Mich. 676, 48 N. W. 203. Upon the question of deceased's contributory negligence they cited, among other cases, *Lee v. Troy Citizens' G. L. Co.* 98 N. Y. 115; *Finnegan v. Fall River G. Works,* 159 Mass. 311, 34 N. E. 523; *Schmeer v. Gaslight Co.* 147 N. Y. 529, 42 N. E. 202; *Stoner v. Pennsylvania S. Co.* 40 Pa. Super. Ct. 599; *Pine Bluff W. & L. Co. v. Schneider,* 62 Ark. 109, 34 S. W. 547; *Plonk v. Jessop,* 178 Pa. St. 71, 35 Atl. 851; *Schermerhorn v. Metropolitan G. L. Co.* 5 Daly, 144; *People's G. L. & C. Co. v. Amphlett,* 93 Ill. App. 194; *Baudler v. People's G. L. & C. Co.* 108 Ill. App. 187; *Laclede G. L. Co. v. Cottone,* 152 Fed. 629; *Cooke v. Baltimore T. Co.* 80 Md. 558, 31 Atl. 327; *Richmond v. Gay's Adm'x,* 103 Va. 320, 49 S. E. 482; *Apfelbach v. Consolidated G. Co.* 204 Pa. St. 570, 54 Atl. 359.

SIEBECKER, J. It is contended by the defendant that the evidence does not sustain the finding that the failure to equip the oven here in question with a pipe and flue connecting its interior with the outer air to carry off the products of combustion and the smoke and fumes was the proximate cause of the explosion, and it is averred that it was proximately caused by the manner of operating the oven, and that such operation of

the oven, even had it been equipped with such a pipe and flue, would have been as dangerous as it was as actually constructed. It appears reasonably clear that if the oven had been equipped with these pipes and flues, the products of combustion, the smoke and fumes, and the unconsumed gases would have escaped through them from the oven to the outer air.   There is opinion evidence to the effect that the oven with such an equipment of pipes and flues would have operated more efficiently than without this equipment, for the reason that it would have improved and increased the draft and thus have removed any undue accumulation of such gaseous products from the oven. It seems that these inferences naturally followed from the facts and circumstances shown.

It is however insisted that the deceased knew, and under the facts shown must be held to have known, of the dangers incident to operating the oven by closing, or nearly closing, the top vent, as was done, and thus smothering the burning gas in this confined space.   The facts and circumstances bearing on the deceased's knowledge of the danger of so operating the oven are not all one way on this question.   The fact that the defendant furnished this appliance in a defective condition and directed the deceased to operate it as it was, implied that the defendant regarded it as safe for its purpose.   It also appears that the deceased was referred to Mr. Wade, the foreman of the painting department, for instructions as to the operation of the oven and the performance of the duty of conducting the enameling process in the oven so furnished him. Nothing appears to show that he was informed by Mr. Wade of the danger that gases and fumes might collect in the oven and extinguish the burning gas if they were not carried off through vents.   It appears that he complained to Mr. Wade that the fire had gone out while the oven was in operation and that he was told to see the person in charge of the gas appliances for defects in the gas fixtures.   This clearly indicates that Mr. Wade and the deceased had not thought that the man-

ner of operating the oven caused the fire to be extinguished. It also appears that for some two months the oven had been operated as it was on the night of the explosion, and, except for the few times mentioned, the fire had kept alive throughout the usual period of from three to three and one-half hours, the time required to complete the baking of the enamel on the parts placed in the oven. The facts that the deceased directed that the oven doors should be opened for five minutes after the fire went out before it was relighted and that he warned others not to go near it with lighted pipes and lanterns do not indicate that he knew what caused the gas to cease burning, but only tends to show that he understood that when the oven was filled with unconsumed fuel gas it was liable to explode upon ignition. The facts and circumstances of the case warrant the inference that the deceased was not informed of the fact that the smoke, fumes, and gases emanating from the heated material in the oven and combustion might, under the existing conditions, smother the burning fires. Hence it was proper to submit this question for determination by the jury.

It is contended that the deceased must be held to have known that gas mixed with air is highly explosive upon ignition and that such a mixture would accumulate in the oven after the burning gas fire had become smothered and extinguished under the conditions under which this oven was being operated, and that therefore he was not entitled to be warned of such a danger; but that he assumed the risk of an explosion as a hazard of his employment, and hence that no recovery can be had for his death. The assumption that he must be held to have known the danger of explosion from gas mixed with air does not, under the circumstances of the case, establish that he assumed the risk thereof, unless the evidence conclusively shows that he knew, or ought to have known, of the existence of the gas in the oven at the time of accident. It appears, as indicated heretofore, that this danger does not accompany the operation of such an oven if it is properly con-

structed and operated. It is therefore not a hazard necessarily inhering in a properly conducted business. We have also shown that it was for the jury to determine whether the deceased knew, at the time of the accident, that the manner in which this oven was being operated would cause the smoke, fumes, and gases to accumulate therein and extinguish the burning fire, and that the jury were justified in negativing this inquiry. The appellant asserts, however, that the deceased, as a man of ordinary intelligence, knowledge, and experience in running this oven, must be presumed to have known of this danger, and hence assumed it as a risk of the business. This contention proceeds upon the assumption that the vent or escape at the top of the oven was wholly closed, and that when so closed it prevented a sufficient draft to supply air and oxygen to maintain combustion in the chamber. The evidence, however, is not conclusive on these points. It does not appear that the vent was wholly closed or that the draft to supply air was wholly checked; but it affirmatively appears that the oven was being operated on this evening as it had been operated ever since its installation, and that it usually had operated successfully. These facts and circumstances of the case do not permit the conclusive presumption of fact on which this contention rests, and hence the contention must fail.

But it is claimed that if this presumption does not prevail, still it must follow that the deceased was, under the existing conditions, apprised of this danger as an incident to operating the oven. Reliance as to this point is placed on the facts that he ordered his men not to go near the oven with an unprotected light, that, to avoid using matches, he ordered an incandescent light to be placed near the thermometer, that he expressed fear of the ovens, that he told those under him, whenever the fire in the oven went out, to open the front doors for five minutes before relighting the gas, and that, as to such an explosion, he had previous experience with a small enamel-

ing oven while conducting a bicycle repair business.    This claim is not well founded, even conceding that all these facts appear, for they do not show that this danger was one necessarily incident to the employment of operating a properly constructed oven, and because the jury, upon the evidence adduced, had warrant to find as a fact that the deceased at the time of the accident did not know that this dangerous condition actually existed.    It is, however, claimed that ignorance of these conditions cannot excuse the deceased, because it conclusively appears that the danger of explosion was a hazard inhering in the conduct of the business under the existing conditions, and that the deceased, as a man of ordinary intelligence and experience in such matters, knew, or must be held to have known, of its existence when he approached the oven with a lantern on the night in question.    True, as claimed, the master may conduct his business in his own way, although another is less hazardous, and the servant assumes the risks thereof if he knows the dangers attending it.    The deceased, however, was found to have been ignorant of the existing danger, and, upon the grounds already given, it cannot be held that he ought to have known of it.    Hence he did not assume the risk.

The claim is urged that, if the case presented does not establish that the deceased assumed the risk of the danger which caused his death, it follows from the evidence as matter of law that he was guilty of contributory negligence.    Many of the facts involved in the foregoing discussion of the assumption of risk bear on this inquiry, and what was there said as to their legal effect applies to this question.    The jury have exonerated the deceased of the charge of any want of ordinary care which proximately contributed to his death.    In addition to the facts heretofore considered, the evidence of the watchman as to what took place immediately preceding the explosion is important as bearing on this issue.    It appears that this watchman was on his round of duty and had just

completed turning off the gas from this oven and erasing the chalk marks from the oven door when the deceased appeared in an automobile. The watchman called to him to wait for him to switch on a light. This he immediately proceeded to do by turning a switch, but the light was not near the door and he turned another switch. Deceased then spoke, saying that it would do, and he thereupon got out of the car, went toward the oven, taking the watchman's lantern from the floor in front of the oven, and went to the place at the side of the oven where the thermometer was located and held up the lantern to enable him to read the thermometer. In about a minute, as the watchman states, the explosion occurred. The watchman also states that the air was charged as usual with smells of the shop and oven, but that he did not distinguish the odor of unconsumed fuel gas. The chalk mark on the oven door, indicating that the gas was to be turned off at 9:30 o'clock, was erased. After the explosion the deceased's watch was found on his person and it was found to have stopped at 9:35 o'clock. Deceased's conduct in going to the opening in the side of the oven and in holding the lantern near the opening where the thermometer was located must be judged in the light of his knowledge of the existing danger. It appears that the time for turning off the gas had expired and that the gas had in fact been turned off. This naturally would lead the deceased to infer that conditions were normal and that there was no gas in the oven. The watchman's lighted lantern, the absence of a gas smell, and all the conditions as described by the night watchman, also indicated that no unconsumed gas had been discharged into the oven and that none had escaped into the room where the deceased and the watchman were. Under such conditions it cannot be held as matter of law that the deceased was apprised of the dangerous situation. His conduct clearly implies that he was acting on the assumption that his environment was free from impending danger, and he undoubtedly

McNear v. Mitchell-Lewis Motor Co. 151 Wis. 286.

thought the fire in the oven had continued to burn as usual until the watchman turned off the gas. In the light of his want of knowledge of the existing dangerous condition of affairs his conduct was that of an ordinarily prudent man. Furthermore, if we assume that he should have anticipated that the fire might possibly have been smothered in the operation of the oven, that cannot control in this case,. because nothing was there to suggest to him the presence of gas, and therefore he had the right to act on the assumption that combustion had continued to the time the watchman turned off the gas. The nature of the acts and the conditions relied upon to show that the deceased was guilty of a want of care are not so clear as to show it *per se*. That fact can only be determined by a consideration of all the facts and surrounding circumstances of the case. It therefore properly comes within the province of the jury and their determination must control. We find no reversible error in the case.

The rules of law governing the case are elementary and so well understood that citation of authorities is unnecessary.

*By the Court.*—The judgment appealed from is affirmed.

WINSLOW, C. J., and MARSHALL and BARNES, JJ., dissent.