SCHNETZKY, Appellant, vs. ZANTO, Respondent.

*April 5—May 3, 1921.*

*Physicians and surgeons: Malpractice: Examination of witnesses: Hypothetical questions: Including facts not in evidence: Prejudicial error.*

In an action by a physician for medical services rendered defendant and his wife wherein defendant counterclaimed for damages for plaintiff's alleged negligence in treating the wife after childbirth, hypothetical questions to medical witnesses by defendant's counsel, embracing as an element the existence of pus in the uterus, constituted prejudicial error, in the absence of evidence as to the existence and nature of the pus.

APPEAL from a judgment of the circuit court for Green Lake county: CHESTER A. FOWLER, Circuit Judge. *Reversed.*

The plaintiff sued in justice's court for his medical services rendered to defendant and his wife. Defendant counterclaimed for damages on account of plaintiff's alleged negligence in treating defendant's wife. On appeal to the circuit court the case was tried anew and the jury found for the defendant.

On March 5, 1919, while attending defendant, plaintiff was employed to take care of defendant's wife, who was delivered of a child on the same evening. For several days thereafter plaintiff attended both husband and wife. According to his testimony he detected symptoms of pneumonia in the wife on March 9th, and on the 10th began a course of treatment for such disease and continued such until March 13th and treated her for no other ailment during that time. At defendant's request, on March 11th Dr. Senn was called in consultation. He testifies that she was then suffering from a critical stage of pneumonia, that he made a manual examination of and found that there was no trouble with the uterus.

On March 13th plaintiff was discharged and one Dr. Berwick called. Dr. Berwick testified that at his first visit he found defendant's wife suffering from septic or blood poisoning, with a very high temperature caused by such condition. That the source of such trouble was in the uterus. That the condition of the uterus at that time was such that it was dangerous to attempt to then clean it out. That at such time, March 13th, Mrs. Zanto had no pneumonia and there were present no indications that she had recently been so afflicted. That four days afterwards he flushed and cleared out the uterus; that in the strongly odorous fluid discharge that came at that time, in quantity approximating a pint, he found a portion of the placenta or afterbirth about the size of a pigeon's egg. That he could tell definitely that such was a piece of the placenta, rather than a blood clot, by an ocular examination. That he then established a gauze drainage from the uterus. That in his judgment an inspection of the placenta immediately after the delivery would have disclosed that a substantial part thereof had remained in the uterus and that proper medical practice required that it should have been removed forthwith. That the critical condition in which he found Mrs. Zanto and from which it took considerable time for her to recover was the direct and probable result of the failure to remove such portion of the placenta. He also testified that at the time of such discharge from the uterus there was no pus. There is no testimony in the record which tends to qualify or contradict this statement as to the absence of pus in the discharge.

A number of physicians were called by each side as experts. As a part of the direct examination by defendant's counsel of the first of such witnesses and who was called on defendant's behalf, questions were asked based upon the assumption of the finding of a piece of afterbirth as described by Dr. Berwick. Dr. Fortner, such first witness, testified

that its remaining there would at least produce absorption and very probably infection; that if infection was produced it would cause septic or blood poisoning. The question was then asked: "State whether or not it would likely produce pus formation." This was objected to as leading, the court then saying:

"We think it is leading. You cannot tell, Doctor, the usual result of leaving the afterbirth, portions of it? . . .

"Witness: It depends upon the type of infection present whether there is pus present or not, streptococcic; one type of infection doesn't cause pus, very little if any; other types· of infection do cause pus, than a staphylococcic infection there would be less pus, so it depends upon the type of infection."

A hypothetical question was then put to the witness in which was included the finding of such a piece of placenta eleven days after the birth of the child; that the womb gave away pus in an amount equal to half a pint, and a temperature that rose from 104 to 106 during the period of five to seventeen days after the birth. This was objected to "because the facts are not proven, are not the same as the facts in the case." The court said: "I think that is true in some respects; for instance, you said that the fluid was not all pus." Defendant's counsel then changed the question so as to make it *blood and pus,* and the court ruled that the witness might answer. (There was no further or more specific objection then or afterwards made during the trial on the inclusion, in the hypothetical questions, of the existence of pus.) The witness then stated that the existence of such a piece of afterbirth with blood and pus formation found in the uterus would be sufficient cause to produce a temperature that would rise anywhere from 104 to 106.

The existence of pus was made a part of the hypothetical questions by defendant's counsel in his examination of all of the medical experts save one, Dr. Baldwin.

All the medical witnesses substantially agreed that an ocular examination of the placenta removed within a few moments after the delivery of the child, as appears happened in this case, would be sufficient to detect whether or not a remnant of such placenta had remained in the uterus. The testimony differed as to whether it was usual and proper practice, in case such examination disclosed that a portion of the placenta did remain, to forthwith, by the use of the hand or some instrument, remove the same, and whether an ocular examination alone would be sufficient to definitely determine whether the substance found in the discharge on March 17th was a fragment of the placenta or a blood clot and as to the advisability of setting up such a gauze drainage as was done by Dr. Berwick.

The plaintiff testified that he did examine the afterbirth and found that it was intact. He was corroborated on both of these points by the midwife in attendance, and, as to the fact that he did make some examination of it, by the defendant. From the judgment for defendant plaintiff has appealed.

For the appellant there was a brief by *Lehner & Lehner* of Oconto Falls, attorneys, and *R. L. Morse* of Fond du Lac, of counsel; and the cause was argued orally by *Philip Lehner* of Princeton.

For the respondent there was a brief by *M. J. Paul* of Berlin and *E. F. Kileen* of Wautoma, and oral argument by *Mr. Kileen* and by *Mr. T. W. Brazeau* of Wisconsin Rapids.

ESCHWEILER, J. Although Dr. Berwick testified directly that there was no pus in the discharge coming from Mrs. Zanto's uterus some eleven days after the birth of the child and in which was found, as he claimed, an overlooked portion of the placenta, yet it is quite apparent from an inspection of the record that through a mistake which could easily arise in the trial of such a lawsuit the court and

counsel on both sides seemed to have assumed that there was testimony which would warrant the including as an important feature of the hypothetical question asked of the medical witnesses the existence of pus in such discharge. Although at one stage of the case the court called attention to the fact that there was no evidence as to the nature of the pus, yet nowhere was there direct or specific challenge made as to such element being improperly included in the hypothetical questions. While it is true that plaintiff's counsel, in his objection as set forth in the statement of facts, *supra,* did not specify such feature as one of the grounds of his objection, neither was he requested by the opposing counsel or by the court to be more specific with his objections.

From the answers of some of the physicians it was evident that in their judgment the presence or absence of pus, or at least the question as to the variety of pus assumed to be present, were elements of considerable importance in determining the substantial question at issue between the parties, that is, whether the condition of high temperature and chills which Mrs. Zanto had from the fifth day after the delivery was naturally and directly attributable to the remaining of a portion of the placenta in the uterus as claimed by defendant, or to some other cause, as pneumonia, as asserted by plaintiff.

While from the medical standpoint the very general term "pus" may include innocuous as well as noxious varieties of exudations, yet to a body of laymen such as make up the jury, the term as it was used in the questions propounded to the medical experts, taken especially in connection with the testimony as to the strong odor arising from the discharge, naturally conveys a strong impression that there was existing a substantial putrefaction of something within the uterus and presumably that which was described by Dr. Berwick as being a portion of the placenta and which defendant claimed had been overlooked by plaintiff in his examination of the afterbirth.

Although, so far as we can discover in the record, this feature of the trial was not called to the attention of the trial court, nevertheless it is suggested and discussed in appellant's brief here. A consideration of the entire testimony satisfies us that this reiterated inclusion of and emphasis upon this element of pus as being present in the discharge must have influenced the jury in a substantial degree in arriving at the verdict which they rendered. We are also convinced that the error was of such a nature that it must be declared to have caused a substantial prejudicial error for which the plaintiff should be granted the relief of a new trial.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.