DELAP, Respondent, vs. LIEBENSON, Appellant.    [Three cases.]

*April 6—May 11, 1926.*

*Explosives: Kerosene below flash standard: Liability of seller: Evidence: As to effect of mixing kerosene and gasoline: Experts: Examination by way of hypothetical questions: Direct and cross-examination.*

1. In an action for personal injuries to minor children and for the property damage alleged to have been caused by the explosion of gasoline vapors given off from oil sold to plaintiff as illuminating or heating oil, it is *held* that the judgment against the seller may be sustained on the ground that the substance sold was in violation of sec. 168.06, Stats., or on the ground of common-law negligence,—the jury having answered questions in plaintiff's favor on each theory of liability. p. 78.

2. Questions as to the effect of mixing gasoline with kerosene cannot properly be determined without expert testimony; and the doctrine of *res ipsa loquitur* does not operate to shift the burden of proof from the plaintiff to the defendant. p. 80.

3. Hypothetical questions on the direct examination of an expert witness should be based alone on the facts in the record, and to permit the inclusion of others is error. p. 82.

4. On the cross-examination of an expert witness, questions may properly be framed assuming a different state of facts than those appearing in the record for the purpose of testing the knowledge and skill of such witness and the weight of his testimony. It was therefore error to refuse to permit the defense to cross-examine plaintiff's expert witness as to the effect of pouring kerosene on a smoldering fire, even though defendant's wife, the only eye-witness of the explosion, had positively denied so pouring the kerosene. pp. 82, 83.

APPEAL from three several judgments in a consolidated action of the circuit court for Winnebago county: FRED BEGLINGER, Circuit Judge. *Reversed.*

The plaintiff *Elmer Delap* with his wife and his infants, a daughter, *Tulip,* and son, *Elden,* were living just outside of the city of Oshkosh in the fall of 1924, and three actions

were brought by him, two as guardian *ad litem* for the personal injuries of the two children and one on his own behalf for damages to his property, caused by explosions and fire in the kitchen of their cottage. For convenience the three cases were consolidated.

Defendant's business was the selling of gasoline and kerosene in Oshkosh, with two filling stations for the retail trade. At the main station one main or stand pipe was used in unloading kerosene and gasoline cars on their arrival on the sidetrack, the flexible end of such pipe being inserted in the car of gasoline or kerosene and then the contents drawn by a pump into the respective stationary tanks through a system of piping with some fifteen valves for control and regulation. Testimony was presented by plaintiff indicating the possibility of a certain amount of gasoline being left in such main pipe after pumping the contents of any gasoline car and prior to the using of the same pipe for drawing off the contents of a kerosene car.

October 2d a tank car with about 6,000 gallons of kerosene arrived at defendant's main filling station, and before being unloaded was tested by the state deputy oil inspector, Mr. Frank Wilson, and found to be, and by him so certified, of a grade and quality. satisfactory under the statutory regulation. On the same day it was drawn from the car into a storage tank, and on October 7th a quantity was drawn into ten-gallon cans and taken to the other filling station, as was the method used, and there emptied through a funnel in the top into an upright barrel maintained for that purpose and containing about fifty-two to fifty-five gallons.

On Tuesday, October 7th, *Delap,* who had been a customer for some time, was served by the defendant personally with gasoline for his auto and also with three gallons of oil in a five-gallon can brought by *Delap.* The three gallons were drawn through a faucet near the bottom of said barrel. The five-gallon can was closed by a cork in the opening on

the top and some sort of a paper plug in the small nozzle of a spout, also on the top, and was placed by *Delap* and thereafter kept in a small pantry outside their kitchen.

On the next day Mrs. Delap poured a quantity from this can into the glass container attached to, and the feeder for, a kerosene cook stove, which was used for cooking purposes at least once between that time and the following forenoon, and she also filled a glass lamp which was lighted that evening and burned all through the night, no trouble resulting from such uses. On Thursday morning, October 9th, Mrs. Delap lit a fire in a small Round Oak heating stove with a large door for fuel of wood or coal on the side. To this fire Mrs. Delap added some green corncobs, causing the fire to smolder for some time. The stove was in the kitchen, about ten by twelve feet in size.

According to her testimony she later brought this can from the pantry into the kitchen, and, placing the glass lamp upon a chair four or five feet from the heating stove and between that and the outer door, started to fill the lamp. Just as she commenced to pour from the can there was an explosion and a flash of flame from the stove followed by a burning in the kitchen, adjoining bedroom in which the girl, *Tulip,* was, and all over the house, and as a result thereof the girl and the little boy, *Elden,* who was between the said chair and the outer door of the kitchen, were severely burned. Damage was also done to the woodwork, wall paper, and curtains of the cottage and to the personal belongings; the spout of the can blew or fell off, the can dropped to the floor on its side, with an outward bulge on the bottom and a small hole in the lower edge, smoke or fire marks on one side, and the floor where it fell blackened and charred by fire. Mrs. Delap was not burned in person or clothing.

On the Monday following, October 13th, the plaintiff *Elmer,* with one Case, a witness, went to the house and took

the glass container attached to the kerosene stove and tests were made of what was testified to have been its contents, one by a local garage man and another on October 14th by said Wilson. The former testified that such contents were below the statutory requirements, and Wilson to the same effect and that it indicated the presence of gasoline. On October 11th Wilson had tested the contents of the kerosene barrel from which the three gallons had been drawn on October 7th, but after some thirty to thirty-five gallons had been sold in the meantime, and such test corresponded with his safety test of the car on October 2d. No complaints from others to whom sales had been made from this carload lot were made to defendant.

Upon the trial a special verdict was answered by the jury substantially as follows: that—

(1) The defendant knowingly sold to *Elmer Delap* kerosene oil for illuminating and heating purposes below the flash standard.

(2) Such character of said oil proximately caused the fire.

(3) The defendant knowingly sold to *Elmer Delap* kerosene oil for illuminating or heating purposes below free-burning standard.

(4) Such character of said oil proximately caused the fire.

(5) The defendant negligently sold to *Elmer Delap* oil having a flash test of 88 degrees F. and 108 degrees free-burning F. (This description corresponded with the result found by the inspector from what was claimed to be the contents of the container of the stove after the fire.)

(6) Such negligence proximately caused the fire.

(7) The injuries to the plaintiffs were not the result of an unavoidable accident.

(8) Combustible vapor proceeding from the oil so sold entered the stove in plaintiffs' home in sufficient quantity

to cause the stove to explode while Mrs. Delap was attempting to fill the lamp.

(9) The temperature in the kitchen at said time and place was 88 degrees F. or more.

(10) No want of ordinary care on the part of Mrs. Delap proximately contributed to the fire.

The damages in the three several causes of action were assessed as follows:

| | |
|---|---|
| For injuries to *Elmer Delap's* premises and personal property | $442 22 |
| To the infant son, *Elden* | 350 00 |
| To the infant daughter, *Tulip* | 2,000 00 |

After motions by the respective parties judgment was directed for the amounts above stated against the defendant, who has appealed from such judgment.

For the appellant there was a brief by *Williams & Williams* of Oshkosh, and oral argument by *George E. Williams*.

*D. K. Allen* of Oshkosh, for the respondents.

ESCHWEILER, J. It was and is asserted on behalf of the plaintiffs that the three gallons of oil sold by defendant as and for kerosene, improperly and unlawfully contained some quantity of gasoline, which vaporized, mixed with the air in the house, was drawn into the fire in the stove and thereby caused explosions and fire. It is claimed that the sale of such a mixture gave a right of recovery because a violation of sec. 168.06, Stats., which prohibits, under a penalty and liability for damages resulting therefrom, any person from knowingly selling any kerosene oil for illuminating or heating purposes which, by reason of being adulterated, or for any other reason, will emit a combustible vapor under certain temperature provisions, or will burn freely at a temperature less than 125 degrees above zero; and also that there exists a liability under the rules of

the common law, irrespective of such statute, for negligently selling for heating or illuminating purposes such an adulterated or dangerous oil. Both of such theories were presented by questions in the special verdict and all answered in plaintiffs' favor.

If this verdict should stand, either theory of liability would support a judgment against defendant. *Knecht v. Kenyon*, 179 Wis. 523, 192 N. W. 82; *Waters-Pierce Oil Co. v. Deselms*, 212 U. S. 159, 179, 29 Sup. Ct. 270; *Wellington v. Downer Kerosene Oil Co.* 104 Mass. 64; *Thornhill v. Carpenter-Morton Co.* 220 Mass. 593, 108 N. E. 474; *McLawson v. Paragon Ref. Co.* 198 Mich. 222, 232, 164 N. W. 668; *Anderson v. Standard Oil Co.* 180 Iowa, 1054, 164 N. W. 169; *Peterson v. Standard Oil Co.* 55 Oreg. 511, 106 Pac. 337; 25 Corp. Jur. 190; 11 Ruling Case Law, 700, 705.

To support a judgment for plaintiffs in this case there must be disclosed sufficient evidence to warrant a finding that the claimed result was produced by a sufficient amount of gasoline being mingled with the 6,000 gallons of kerosene in the car unloaded on October 2d or becoming mixed with its contents on the passage through the piping system to the kerosene storage tank, or from there into the barrel from the bottom of which were drawn the three gallons on October 7th. That there could have been no appreciable amount in the car before unloading is quite clear from the uncontradicted cross-examination of plaintiffs' witness, Wilson, the state deputy oil·inspector, there being no impeachment or qualification of his testimony that he tested its contents and found them of satisfactory grade and as he so certified. There is no suggestion in the record that the test he made was not in the usual and approved manner and sufficient. There is left, then, the possibility of gasoline becoming mingled with the kerosene on its way from the car to the storage tank by reason of gasoline being left in the piping

system from a prior pumping of gasoline. No direct testimony that such happened could be expected to be given or was given. The testimony on both sides on the trial below as to the system of piping; the amount, if any, of gasoline that could remain in such pipes after the pumping from a car had ceased; the direction in which any such amount would travel because of the slope or inclination of such pipes either towards the car from which the pumping was done or towards the storage tanks, is very indefinite and unsatisfactory, leaving it almost if not quite a matter of speculation rather than of possible and reasonable determination, that such a mixture there took place.

No testimony was offered by plaintiffs to indicate what quantity of gasoline must necessarily have been present with the kerosene to cause the result claimed in this case, nor any showing made as to the length of time any required quantity of gasoline would have to be exposed to the open air in order for it to produce such amount of vapor and to permeate the house in order to produce the explosions and fire in the different rooms, as it is claimed by the plaintiffs was done.

The evidence on these different points, especially on the scientific questions involved, is far short of that presented on behalf of the plaintiffs in such cases as *Musbach v. Wisconsin C. Co.* 108 Wis. 57 (see statement of facts, p. 62 et seq.), 84 N. W. 36, particularly the showing there made that a certain proportionate mixture of such fumes will burn but not explode, and the length of time necessary for the dispersion of a sufficient quantity in a given space; *McNear v. Mitchell-Lewis M. Co.* 151 Wis. 286, with the details given at pp. 289 to 292 (139 N. W. 535); *Buggs v. Rock County S. Co.* 143 Wis. 462, with the facts as to the chemical process involved at p. 465 et seq. (128 N. W. 100); *Waters-Pierce Oil Co. v. Deselms,* 212 U. S. 159, 29 Sup. Ct. 270, where it was shown (p. 168) that 300 gallons of

gasoline were run by mistake into 6,600 gallons of coal oil and expert testimony given as to the effect of such mixture (p. 171).

Questions such as were here presented are clearly ones which juries and courts cannot properly determine without the aid of the testimony of experts. *Estate of Butt,* 181 Wis. 141, 146, 193 N. W. 988; *Maryland Cas. Co. v. Thomas F. Co.* 185 Wis. 98, 105, 201 N. W. 263; *Quass v. Milwaukee G. L. Co.* 168 Wis. 575, 577, 170 N. W. 942. Nor can any application of the doctrine of *res ipsa loquitur* shift the burden of proof from plaintiff to defendant in such class of cases. *Maryland Cas. Co. v. Thomas F. Co., supra* (p. 106); *Pinter v. Wenzel,* 173 Wis. 84, 86, 180 N. W. 120; *Klein v. Beeten,* 169 Wis. 385, 389, 172 N. W. 736.

The testimony of Mrs. Delap, the only eye-witness, would, if the accident happened as she says it did, naturally be somewhat confused and indefinite as to the sequence and details of the event. From her testimony, however, on examination before trial and on the trial, many details were left quite uncertain; for instance, whether the stove door blew open or was left open for some time before the explosion; whether the stopper or cork in the top of the kerosene can was out or in when she started to fill the lamp; which of the two explosions of which she speaks, namely, one at the stove and one at the kerosene can, was first or whether they were simultaneous; whether the can was in the kitchen and its contents exposed to the air any appreciable length of time before the explosion, thereby permitting the fumes of gasoline, if any such there were, to spread into the kitchen and other parts of the house. These matters may be important in connection with her testimony to the effect that she had damp cobs on the fire, and, as she expressed it, "it [the fire] kind of came to life and reached the kerosene can and it exploded," and the further fact, though standing as she claims she was at a point just

about between the stove door and the kerosene can and with the latter in her hands, she was not burned either on her person or clothing.

Evidently the doctrine of *res ipsa loquitur* would not have had sufficient support to establish defendant's liability on the testimony of Mrs. Delap alone, and plaintiffs called as an expert witness said Wilson, the deputy oil inspector. He very frankly disclaimed expert knowledge gained through experiments either with mixing kerosene and gasoline or with the passing off of vapor or fumes from the latter or from witnessing explosions, but was permitted to qualify as an expert witness by reason of his some sixteen years' practical experience as inspector. His testimony in substance was that in a mixture of kerosene and gasoline, the gasoline, being the lighter, rises to the top, and when exposed to the air vaporizes much faster than kerosene does; that such gasoline vapor will explode if in contact with a flame; and that such vapor following the currents of air in a room would be drawn in by the draft of a fire and cause an explosion; and that he did not believe that with kerosene of standard quality used in filling the lamp as testified to by Mrs. Delap such explosion would have resulted.

Mrs. Delap had testified on cross-examination that she poured no kerosene onto the fire in the stove that morning and that she had often used kerosene for the purpose of starting fires, but had not done so in this cottage, in which they had lived since the preceding May.

On the cross-examination of Mr. Wilson he was asked: "Q. Now, if kerosene had been placed upon embers of fire, what would happen in a few moments?" The trial court sustained the objection interposed to such question on the ground that, being a hypothetical question, it was not based on any facts shown in the case; Mrs. Delap having, as above stated, expressly denied pouring kerosene into the stove and there being no offer on defendant's part to prove by any

other witness that such had been done. In so overruling the objection, however, the court stated that defendant was entitled to account for the explosion through any circumstances shown in the evidence or that may be reasonably inferred from anything in the evidence. Defendant also offered to prove by an expert witness, head of the department of chemistry of the Oshkosh high school, what would be the result of placing kerosene on a smoldering wood fire in such a stove, and the objection to such testimony was also sustained.

In his ruling refusing to permit the proposed cross-examination of plaintiffs' expert witness we think prejudicial and reversible error was committed and that the trial court failed to follow the correct rule of evidence. Unquestionably hypothetical questions put on direct examination of an expert witness should be based upon facts in the record, and to permit the inclusion of others is error. 2 Jones, Ev. (3d ed.) § 371; 3 Chamberlayne, Ev. § 2459; *Sullivan v. M., St. P. & S. S. M. R. Co.* 167 Wis. 518, 524, 167 N. W. 311; *Dreher v. United Commercial Travelers,* 173 Wis. 173, 180 N. W. 815; *Schnetzky v. Zanto,* 174 Wis. 160, 164, 182 N. W. 751. When it comes to cross-examination of such expert witnesses, however, the rule is not so limited and, within the field of the trial court's reasonable discretion, questions may properly be framed assuming quite a different state of facts than those appearing in the record for the purpose of testing the knowledge and skill of such witness and the weight to be given to his testimony. 2 Jones, Ev. (3d ed.) § 389; 3 Chamberlayne, Ev. § 2479; *Brey v. Forrestal,* 151 Wis. 245, 258, 138 N. W. 645; *Stemons v. Turner,* 274 Pa. St. 228, 117 Atl. 922, 26 A. L. R. 727; *Bathrick v. Detroit Post & Tribune Co.* 50 Mich. 629, 643, 16 N. W. 172. That an undue limitation of such right of cross-examination may be prejudicial error is pointed out in *Fernhaber v. Cream City C. Co.* 176 Wis. 75, 82, 186 N. W. 175.

Delap v. Liebenson, 190 Wis. 73.

While Mrs. Delap had on cross-examination positively denied the pouring of kerosene onto the smoldering fire, yet that being as to a material feature in the case the defendant was not bound by such answer. That there was a smoldering fire in the stove and kerosene in the cottage were conceded facts, and that the kerosene might have been poured on the fire was within the reasonable possibilities, when considered in connection with Mrs. Delap's testimony of former use of kerosene for firing purposes. The expert having testified as to what would be a possible or probable result from the state of facts testified to by Mrs. Delap, it became eminently proper, on cross-examination, to require him to assume a different state of facts, especially where such covered so plainly a possible state of facts, even though contradictory of that testified to by Mrs. Delap, and to have him answer as to whether the same result could not then have been reached as was reached under the facts assumed on his direct examination.

While some cases, such as *Ellis v. Republic Oil Co.* 133 Iowa, 11, 110 N. W. 20; *Waters-Pierce Oil Co. v. Deselms,* 212 U. S. 159, 175, 29 Sup. Ct. 270; *Peterson v. Standard Oil Co.* 55 Oreg. 511, 523, 106 Pac. 337, *supra,* hold that it is matter of common knowledge that kerosene is used in starting wood fires and that such use is not necessarily negligence on the part of such user, yet as indicated in *McLawson v. Paragon Ref. Co.* 198 Mich. 222, 228, 164 N. W. 668, *supra,* the rule may be otherwise when using kerosene to replenish or hurry a fire already started (upon neither of which points, however, do we deem it necessary to express an opinion) ; yet in view of the disclosed situation and as bearing upon the weight to be given to the evidence offered on behalf of the plaintiffs as to how the accident happened, we think the line of inquiry suggested by the proposed question on cross-examination of Mr. Wilson should have been permitted.

Defendant complains of the refusal to permit his expert

witness to testify as to the results of experiments made by him with kerosene and gasoline to illustrate or support his oral testimony on the general subject of mixing the two and their vaporizing. The objection, however, was properly sustained upon the then record. 3 Jones, Ev. (3d ed.) §§ 403, 410.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.