ZIELSDORF, Administratrix, Respondent, vs. GROTSKY, Appellant.

*February 7—March 6, 1928.*

*Death: Negligence: Carbon monoxide poisoning: Evidence.*

1. In an action for the death of one who died in a small closed bath room wherein a gas water-heater, which had no escape or vent pipe to carry off gases, was burning, questions concerning the nature and effect of carbon monoxide gas, relied on as the cause of death, are *held* particularly and peculiarly subjects calling for the testimony of experts. p. 255.
2. The evidence here as to the cause of death and the effect of carbon monoxide gas is so unsatisfactory that a new trial should be granted defendant. p. 258.

APPEAL from a judgment of the circuit court for Kenosha county: E. B. BELDEN, Circuit Judge. *Reversed.*

This action was commenced July 23, 1924, to recover under the statute for the death of plaintiff's husband, William A. Zielsdorf, on May 16, 1924. After trial in October, 1925, a judgment was entered May 3, 1926, in favor of plaintiff. In November, 1926, defendant made a motion for a new trial on the ground of newly-discovered evidence and appeals from the judgment and denial of such motion.

February 17, 1924, the deceased, William A. Zielsdorf, with his wife and five children, at Kenosha, moved into and occupied as tenants defendant's cottage of five rooms and a bath room of about 440 cubic feet in size, with one door opening into a hallway and one outside window, the latter, at the time in question, tightly closed. On May 10, 1924,

at defendant's own volition and not pursuant to the agreement for leasing, defendant arranged with a licensed plumber of that city to buy and install a gas water-heater in the bath room. On top of the heater was an opening two and three-fourths inches in diameter to which could be attached a pipe or vent to conduct the gases or smoke to the outside. Such vent was uncovered but had no pipe added. It had a copper coil which was reached by the gas flames.

Shortly after its being installed, deceased, forty-two years old, a laborer employed at the Nash plant, showed his wife how such heater should be started and operated. On May 16th, about 6 p. m., the deceased started the heater for his own purpose. He was last seen alive by his wife as he was standing in the bath room. She closed the door on then leaving, and some fifteen or twenty minutes later she found the door partly open (which could have been done by a person in the bath tub) and saw the deceased in the half-filled bath tub, one arm on the edge, the other under the water, his head inclined backward and with the tongue partly out from the mouth. He was carried to an adjoining bedroom and first aid administered, but he was dead upon the arrival of the physician.

The plumber who installed the heater was not a witness. Another city plumber testified that it was customary, in installing gas water-heaters in that city, to attach a pipe to the opening on the top of such heaters, although some such were there installed in basements or kitchens without such pipe; that such installation of heaters is not within the province of the city plumbing inspector nor was any permit required from the city. The same heater was used by subsequent tenants with no change made and with no apparent evil effects.

The special verdict was in substance as follows:

(1) Did the gas heater generate and discharge carbon monoxide gas sufficient to cause the death? *A.* Yes.

(2) Was such gas the proximate cause of the death? *A.* Yes.

(3) Was the fact that there was no escape or vent pipe to carry off gases from the gas heater a proximate cause of the death? *A.* Yes.

(4) Did defendant know, or ought he in the exercise of ordinary care to have known, before and at the time the heater was installed, that when lighted it would discharge poisonous gases? *A.* Yes.

(5) Was the failure to equip it with an escape or vent pipe want of ordinary care by defendant? *A.* Yes.

(6) Was such want of ordinary care a proximate cause of the death? *A.* Yes.

(7) Did any want of ordinary care on the part of Ziels-dorf proximately contribute to his death? *A.* No.

Plaintiff's damages, $6,000.

The cause was submitted for the appellant on the briefs of *Robert V. Baker* of Kenosha, and for the respondent on the brief of *Roy S. Stephenson* and *Clarence J. Fisher,* both of Kenosha.

ESCHWEILER, J. The questions that were here presented concerning the nature and effect of carbon monoxide gas alleged to have been, and relied upon as, the cause of the death, as well as the real cause of the death, were particularly and peculiarly subjects calling for the testimony of experts, persons qualified from knowledge or experience to testify on such matters. *Estate of Butt,* 181 Wis. 141, 146, 193 N. W. 988; *Peacock v. Wis. Zinc Co.* 177 Wis. 510, 518, 188 N. W. 641.

Plaintiff relied upon the testimony of a city chemist and the attending physician. The chemist testified in effect that carbon monoxide gas may be created by the burning of illuminating gas such as was furnished in that city, which contains a six to ten percentage of carbon monoxide. That

such carbon monoxide is invisible, tasteless, odorless, possibly three to four times heavier than air, hostile to it, tends to fall, and mixes very slowly with the air when liberated, and may be released by incomplete combustion and by the flames striking the cold surface of the copper coils. After a recess, however, and an examination of authorities, he admitted he had been mistaken in part of that testimony and then testified that such carbon monoxide was lighter than air.

The doctor who attempted to resuscitate the body had had no experience with deaths from such poisoning gases; he then noticed the air in the bath room as being very close; from the history given him of the presence of the burning gas heater it was his opinion that the cause of death was lack of oxygen, which was equivalent to the presence of carbon monoxide; that except from what he was informed about the gas heater he could not have told the cause of death by a superficial examination; that no chemical test of the blood was made, and if such had been made it would have disclosed the presence of carbon monoxide, if such there had been, from the known effect of such gas upon the blood. That except from his knowledge as to the gas heater it would have been more reasonable to believe that death was from heart failure than from any other cause. That the head being thrown back and the tongue protruding indicated death from some gas poisoning, although not indicative of carbon monoxide.

There was testimony from a city fireman who attempted to give artificial respiration to the body after removal to a bed and before the doctor arrived, to the effect that he found that the tongue was within the mouth and that he withdrew it as a usual precaution in such efforts to prevent it falling back into the throat, and that it was so left when the doctor came.

Some time after the entry of judgment and on a motion for a new trial there was presented the affidavit of a grad-

uate of the State University who had done considerable research work in chemistry, and who had made tests with the same gas heater in the same bath room, and giving as his conclusion, from such experiments, that the room could be tightly closed for at least an hour with the gas heater going without any material effect on a human being. Reference was also then made to two bulletins, numbers 303 and 304, issued by the United States Bureau of Standards, Department of Commerce, in January, 1926, in vol. 20, "Technologic Papers of the Bureau of Standards," on the subject of examinations into and reports upon a number of accidents occurring in the spring of 1923 in the city of Baltimore, where apparently there is a much larger percentage of carbon monoxide in the gas sold than in that at Kenosha; and showing the many uncertain features existing as to the construction and operation of such appliances under varying gas pressures.

The testimony upon which the verdict was supported on the main questions involved is very meager and unsatisfactory.

That such disastrous results do not inevitably follow the use of such a gas water-heater in a closed bath room for fifteen or twenty minutes, there being no pipe from such heater to the outer air, is quite certain. There was no expert testimony that such pipe was necessary to avert such a result, a feature upon which there is direct testimony offered in the gas-heater case decided in 1926 of *Gobrecht v. Beckwith* (N. H.) 135 Atl. 20. The kind of testimony possible to obtain and proper to offer is shown in the gas enameling oven explosion case of *McNear v. Mitchell-Lewis M. Co.* 151 Wis. 286, 290, 292, 296, 298, 139 N. W. 535. See, also, *Delap v. Liebenson,* 190 Wis. 73, 79, 208 N. W. 937. The medical testimony as to the cause fell far short, in probative value, of that presented in the case last above cited. It bordered on, if it did not enter into, the field of

pure speculation. The doctor, admitting no prior actual experience in treatment or examination of poisoning cases, might, had proper and timely objection been interposed, have been held not qualified to give the testimony he did as to his belief as to the cause of death. *Boyle v. State,* 57 Wis. 472, 479, 15 N. W. 827; *Soquet v. State,* 72 Wis. 659, 665, 40 N. W. 391; *Zoldoske v. State,* 82 Wis. 580, 605, 52 N. W. 778.

The entire situation is such that we feel the ends of justice will be better served by holding that a new trial should have been and now is granted.

*By the Court.*—Judgment reversed, and cause remanded with directions that a new trial be granted.